UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CARLYN RINGER,

                     Plaintiff,

    v.                                       1:22-CV-1001
                                            (DJS)

CITY OF SCHENECTADY; POLICE OFFICER
BRIAN POMMER; JOHN DOE #1-5

                     Defendants.

**APPEARANCES:**                               **OF COUNSEL:**

LAW OFFICES OF JOHN R. SEEBOLD         JOHN R. SEEBOLD, ESQ.
*Attorney for Plaintiff*
1536 Union St.
Schenectady, New York 12309

JOHNSON LAWS, LLC                      APRIL J. LAWS, ESQ.
*Attorneys for Defendants*                       GREGG T. JOHNSON, ESQ.
646 Plank Road, Suite 205
Clifton Park, New York 12065

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANUM-DECISION and ORDER

### I. INTRODUCTION

Defendants have filed a comprehensive Motion for Summary Judgment in this matter. Dkt. No. 35. Plaintiff opposes certain aspects of the Motion. *See* Dkt. No. 43-7, Pl.'s Mem. of Law in Opp. Defendants filed a reply. Dkt. No. 45. For the reasons that follow, the Defendants' Motion is granted in part and denied in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's Complaint was filed on September 21, 2022, and arises out of a police-civilian encounter that occurred in Schenectady, New York, on September 24, 2019. Dkt. No. 1, Compl.  It is alleged that, at that time and place, Plaintiff Carlyn Ringer was the victim of an unlawful search and arrest by then Schenectady Police Officer Brian Pommer.[1]  The Complaint asserts that Officer Pommer searched Plaintiff's purse without her consent and without justification.  Compl. at ¶¶ 19-21.  Defendant Pommer then handcuffed Plaintiff and placed her under arrest for Criminal Possession of a Controlled Substance in the Seventh Degree, as well as for a prior misdemeanor charge of Loitering that had allegedly occurred six days earlier.  *Id.* at ¶ 22.  It is also alleged that, in effectuating the arrest, Officer Pommer used excessive and unnecessary force, including slamming Plaintiff's head against the roof of the police vehicle, throwing her into the back seat, and slamming her foot in the car door, causing severe injuries.  *Id*. at ¶¶ 23-24.  According to the Complaint, the misdemeanor charges that were lodged against the Plaintiff were dismissed on motion in March 2020.  *Id.* a ¶ 35.

The Complaint contains six separate causes of action.[2]  First, Plaintiff makes a claim under 42 U.S.C. § 1983, alleging that the conduct by Officer Pommer violated her Fourth and Fourteenth Amendment rights under the United States Constitution, and that

---

[1] At the time of the incident, Defendant Pommer was a Schenectady Police Officer, but has since been promoted to the rank of Detective.  For purposes of this Decision, which relates to conduct that occurred prior to his elevation, he will be referred to as Defendant Pommer or Officer Pommer.

[2] The Complaint initially contained claims against John Doe #1-5, but at no point were any of these unnamed officers identified, nor was there any motion to amend the pleading to add any party.  Accordingly, the claims against the Doe Defendants are dismissed.  *Gray v. Harder*, 2016 WL 4708233, at *4 (N.D.N.Y. Aug. 9, 2016), *report and recommendation adopted*, 2016 WL 4703739 (N.D.N.Y. Sept. 8, 2016).

such conduct constituted an unreasonable search and seizure; violated her due process rights; as well as her right to equal protection. Compl. at ¶¶ 39-46. The second and third claims in the Complaint, relying upon the same facts as the first claim, are based upon the New York State Constitution and allege a violation of her equal protection rights, as well as her rights against unreasonable searches and seizures. The fourth claim in the Complaint asserts a common law battery claim. *Id.* at ¶¶ 55-58. The fifth claim is against the City of Schenectady and alleges that the City was negligent in its hiring and retention of Officer Pommer. *Id.* at ¶¶ 59-66. The final claim under state law is that the City is responsible for the conduct of Officer Pommer, its employee, under the theory of respondeat superior liability. *Id.* at ¶¶ 67-70.

After the City Defendants answered and denied the substantive allegations of the Complaint, and counsel attended an initial Rule 16 discovery conference with the Court, the parties engaged in pretrial discovery which helped clarify some, although not all, of the issues in dispute. As taken from the Defendants' Amended Statement Of Material Facts, Dkt. No. 37 ("ASOMF") and agreed to by Plaintiff in her Response, Dkt. No. 43-8, the following facts have been determined for purposes of this Decision and Order:

At the time of the incident Plaintiff was an active drug user, and was attending a methadone clinic. Dkt. No. 43-6 at ¶¶ 5-6. On September 18, 2019, she went to Vale Park in Schenectady with the intent to buy drugs. ASOMF at ¶ 16. At that time, she was arrested by Schenectady Police Officer Sarah McDonald for Loitering. *Id.* at ¶17. At the police station she admitted the facts of the offense to the police and agreed to assist them.

*Id*. at ¶¶ 18-19.  However, she then decided not to do so, and broke off communication with the police.  *Id*. at ¶¶ 21-22.

On September 24, 2019, the investigating detective, Gonzalez, prepared an information charging the Plaintiff with Loitering in the First Degree, a class B misdemeanor.  ASOMF at ¶ 23. On that same date, Defendant Officer Pommer went to arrest Plaintiff at 600 Franklin St., Schenectady.  *Id*. at ¶ 25.  The arrest and escort were recorded by the Defendant's body worn camera video (BWCV).  Dkt. No 35, Ex. C.  Defendant Pommer encountered Plaintiff in the lobby of the building and advised her that she was under arrest for the September 18 Loitering incident and proceeded to handcuff her.  *Id*. at ¶¶ 36, 47.  In the BWCV, Plaintiff appears impaired and unsteady on her feet, and requests that she be provided with methadone.  BWCV at :53-:58.  She was directed to put down her purse and, when asked by Officer Pommer if there was anything in her purse, she acknowledged that it contained a "crack pipe."  ASOMF at ¶ 42; BWCV at 1:25-1:30.  A subsequent search discovered a portion of a Xanax bar.  ASOMF at ¶ 71.

Plaintiff was then escorted, in handcuffs, outside to the waiting patrol vehicle.  ASOMF at ¶ 50.  During the short walk it appears that the Plaintiff was speaking with someone on the other side of the street, and in response to the question "what happened?" Plaintiff told the bystander: "I don't know what I did."  BWCV at 1:40.  She continued to walk cooperatively with the Officer escorting her, but at one point while they were at the side of the car, she looked back at the officer and stated loudly "don't grab my hand like that." BWCV at 1:49-1:58. Officer Pommer then pushed her, face first, into the side of the police cruiser and stated: "[inaudible]fucking move" and "stop fucking moving."

*Id*.; ASOMF at ¶ 60.  The body camera falls to the ground but picks up conversation between Plaintiff and the Officer, including her saying "you bashed by chin into the fucking door," and the Officer responding, "get in the car" and "don't pull away from me." *Id*. at 2:20-2:33.  There was also a discussion about the Defendant shutting the car door on Plaintiff's leg.  *Id*. at 2:35-2:40.

After the incident, the Plaintiff was brought to the police station and was provided with medical treatment for her injuries.  ASOMF at ¶¶ 72-94.  As a result of the conduct described above, Plaintiff received a laceration to her chin that required five stitches.  *Id.* Her foot had only a bruise, which did not require active treatment.  *Id.*

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant.  FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party

has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. ANALYSIS

### A. Plaintiff's Claim Involving the Use of Force

Plaintiff asserts a section 1983 claim for excessive force against Defendant Pommer, as well as the state law claim for battery, and the related claim against the City of Schenectady under a respondeat superior doctrine. Dkt. No. 1 at pp. 6, 8, & 10. As

the battery claim and the constitutional excessive force claim are governed by the same standard, *Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009); *Cornell v. Village of Clayton*, 691 F. Supp.3d 608, 621 (N.D.N.Y. 2023), they will be analyzed together.

An excessive-force claim arising in the context of an arrest is "properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394 (1989). The standard is one of objective reasonableness. *Id*. at 388. In assessing whether the force an officer used is "reasonable," a court (and a jury) must balance "the nature and quality of intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Id.* at 396. This is a fact-specific inquiry which "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* In considering these factors, a court must bear in mind that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id*. (internal quotation omitted). On summary judgment, therefore, a court must "determine whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." *Brown v. City of New York*, 798 F.3d 94, 103 (2d Cir. 2015). If so, it is then up to the jury, using its common sense and life experiences, to determine whether the Fourth Amendment reasonableness standard was exceeded. *Id.* at 103-104. That is the case, "[e]ven though most of the facts concerning the application of force are undisputed." *Id.* at 103.

Defendants have presented a multifaceted argument in support of this aspect of their Motion. First, they argue that the 42 U.S.C. § 1983 claim is defective because the phrase "excessive force" does not appear in the Complaint, except on a single occasion in the state law battery claim. Dkt. No. 38, Defs.' Am. Mem. of Law at p. 15. Second, Defendants argue that the force used by Officer Pommer was *de minimis* as a matter of law, even though it resulted in bruising and a laceration requiring stitches. *Id.* at p. 17 n.8 & pp. 19-20.

Third, Defendants maintain that any force used by Officer Pommer was objectively reasonable because at the point in the escort when Plaintiff was at the side of the police cruiser, Plaintiff raised her voice and began to turn away, leading to the Officer's reasonable belief that she might flee. *Id*. at p. 17-18. Further, they note that the soft hand techniques utilized by Defendant Pommer were the least severe physical force options available to the Officer. *Id.* at p. 18.

Fourth, Defendants argue that even if the force used was considered objectively unreasonable, Officer Pommer would still be entitled to qualified immunity because it was not clearly established that his conduct violated the Constitution, as there was no existing legal precedent that specifically governed the facts in this case. *Id.* at pp. 23-28. Finally, Defendants note that if the state law claims of excessive force fail, the claim of respondeat superior must likewise be dismissed. *Id.* at p. 21.

Defendants' first argument that the § 1983 use of force claim is defective because the Complaint only uses the phrase "excessive force" in connection with the state law battery claim, is simply not persuasive. *See Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705,

712 n.4 (2d Cir. 1980) ("Generally a complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the legal theory or theories and statutory basis supporting the claim."). Here the Complaint unequivocally invokes the Fourth Amendment and sets forth facts regarding the excessive nature of the force used during the arrest, *see* Compl at ¶¶ 23 & 39, and that provided sufficient notice and allowed the parties to prepare an appropriate defense, as shown by the nature of the discovery undertaken by defense counsel.

Second, Defendants are also incorrect that the limited nature of the injury, which they characterized as *de minimis*, prevents this excessive force case from going forward. The Second Circuit has routinely held that assertions of injury even less severe than presented in this case were sufficient to prevent the summary dismissal of a § 1983 claim for excessive force. *See Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) (Plaintiff alleged that she was pushed against the door of her car, "yanked" and thrown up against the fender, and had her arm twisted behind her back, causing bruising); *Bellows v. Dainack*, 555 F.2d 1105, 1106 & n.1 (2d Cir. 1977) (upholding excessive force claim involving twisting of plaintiff's arm, pushing him into the back seat of a police car, pulling him by the scruff of the neck, and striking him in the ribs). As recently summarized by the Second Circuit:

> we have never held that a court may grant summary judgment to officers on an excessive force claim merely because the injuries were minor even where the force was unreasonable. Any such holding would violate the rule announced in *Graham* and would grant a windfall to officers who commit misconduct but could escape liability based upon the hardiness of their victims. While the absence of serious injury is certainly a matter that the jury can consider in assessing both the reasonableness of the force and

potential damages from any misconduct, a district court should not grant summary judgment on this basis alone.

*Ketcham v. City of Mount Vernon*, 992 F.3d 144, 150-51 (2d Cir. 2021)

Turning next to Defendants' argument that summary judgment on the excessive use of force and battery claims can be granted on the present record, the Court again disagrees. Here, the parties offer vastly different versions and interpretations of the incident, and even though there is a video of at least some of the events that took place, it does not offer a definitive picture of what occurred. In the end, how a jury would, or could, view the need and justification for the force applied is a question which cannot be decided by this Court at this time. Defendants' arguments miss the mark largely because they draw all necessary inferences in the Officer's favor, and not in the Plaintiff's. *See Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021).

Viewing the evidence in a manner most favorable to Plaintiff, a jury could reasonably find that the severity of the crime, a nonviolent misdemeanor, was very low; that Plaintiff, a young and slight woman, had complied with all the Officer's inquiries and requests, including voluntarily turning around to allow handcuffs to be applied; that she appeared distraught, impaired, and possibly in need of medication; that she responded to the police inquiries by alerting the officer to contraband in her purse; that she walked with the police officer to the back of the police vehicle voluntarily and cooperatively; that she posed no threat to the officer due to the fact that she was handcuffed and compliant; that she believed that the officer was doing something with his hand to her that she objected to, and turned to voice that objection; that at the time of this occurrence she was

not a flight risk and was not actively and intentionally resisting arrest; and, finally, that the officer, without issuing any prior verbal commands and giving her a chance to comply, drove her face into the car doorframe causing a laceration requiring stitches, followed by slamming the car door into her legs. *See generally* Dkt. No. 43-6, Ringer Decl.

Having reviewed the evidence presented on this Motion, the Court concludes that questions of fact exist which preclude summary judgment. It may well be that after hearing the testimony, and viewing the video and relevant medical records, the jury concludes that this was an objectively reasonable use of force. That the jury may find in favor of the officer, however, is not the standard to be applied in connection with a motion for summary judgment. *See Bowling v. Jamison*, 2020 WL 1270475, at *3 (N.D.N.Y. Mar. 17, 2020) ("The Court has carefully reviewed the video and other record evidence and finds that, although a jury viewing the incident would *probably* conclude that Defendants acted reasonably, the jury could not be deemed irrational for concluding that Defendants acted unreasonably.") (emphasis in the original). Further, though Officer Pommer may have personally believed that the Plaintiff was attempting to flee, it does not follow that his perception, or in the Plaintiff's view – overreaction, was reasonable based upon the objective facts.

Finally, because of the outstanding questions of fact, the Court cannot grant Officer Pommer's request for qualified immunity. Defendants' argument that the wrongfulness of the alleged conduct was not clearly established at the time of the incident, is belied by existing precedent. In *Ketcham v. City of Mount Vernon*, the Circuit noted: "there is presumably no proper law enforcement justification for deliberately pushing a

restrained individual's head into a car's hard, metal doorframe. Thus, if a jury credits [plaintiff's] testimony that [the officer] deliberately slammed his head into the car's doorframe despite him being restrained and not resisting, that force would be excessive." 992 F.3d at 151.  The Second Circuit emphasized that this was clearly established law prior to 2017 when it stated, "we have previously reversed a grant of summary judgment where the plaintiff adduced evidence that a police officer 'shoved her head first into his police car, causing her head to strike the metal partition between the front and back seats.'" *Id*. at p. 151 (quoting *Maxwell v. City of New York*, 380 F.3d 106, 109 (2d Cir. 2004)).

The denial of qualified immunity on this Motion is without prejudice.  At the trial in this matter, Defendant Pommer can raise the issue of qualified immunity again.  The Second Circuit has identified the procedure by which trial courts should resolve disputes on factual issues at trial that are relevant to the qualified immunity analysis. *Jones v. Treubig*, 963 F.3d 214, 224-25 (2d Cir. 2020).  In particular, "[i]f there are unresolved factual issues which prevent an early disposition of the defense [of qualified immunity], the jury should decide these issues on special interrogatories." *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990); *see also Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) ("We believe that use of special interrogatories in this case resolves the difficulty of requiring the jury to decide what the facts were that the officer faced or perceived and requiring the court to make the ultimate legal determination of whether qualified immunity attaches on those facts.").

For the reasons set forth above, the Motion for Summary Judgment on Plaintiff's

excessive force claim is denied. For the same reasons, Plaintiff's battery and related respondeat superior claims will also proceed to trial. *Cornell v. Vill. of Clayton*, 691 F. Supp.3d at 622.

### B. Plaintiff's Remaining Claims

Defendants' Motion also seeks dismissal of Plaintiffs' other claims as well. Defs.' Am. Mem. of Law at pp. 3-13.

First, Defendants' note that the search of the Plaintiff's purse was in all respects constitutional, as the search was done with her consent, was performed as an incident to a lawful arrest, and was supported by probable cause. Dkt. No. 38, Defs' Am. Mem. of Law at pp. 4-6. Plaintiff, through her counsel, does not dispute this argument, *see* Pl.'s Mem. of Law in Opp. at p. 12, and therefore the illegal search claim is dismissed.

Next, the Complaint, construed in a fashion most favorable to the Plaintiff, alleges that both the original Loitering charge, and the Criminal Possession in the 7th degree charges, violated her rights, in that they were not based upon probable cause, she was maliciously prosecuted, and the charges violated her right to equal protection. Comp. at ¶¶ 22, 41, 43. However, a review of the evidence submitted to the Court establishes that both charges were properly filed. Plaintiff conceded engaging in the conduct outlined in the first charge of loitering, which was not initiated by Defendant Pommer, who was simply effecting the arrest after the Misdemeanor Complaint had been filed. ASOMF at ¶¶ 19, 23-25. Regarding the possession charge, this was based upon the Xanax bar that was found in Plaintiff's purse which, as noted above, was the result of a legal search. Accordingly, the Court agrees with Defendants that the claims associated with the arrest

and prosecution of Plaintiff must be dismissed.

Relatedly, the state law claims for New York State constitutional violations involving due process, unlawful search, and improper arrest and prosecution, are premised upon the same facts as those just articulated. Therefore, and for the reasons set forth above, these claims are likewise dismissed.

Defendants additionally argue, and Plaintiff's counsel concedes, that there is insufficient evidence to establish a *Monell* claim against the City of Schenectady, a claim under the Equal Protection Clause, and claims related to medical care. Defs.' Am. Mem. of Law at pp. 11-12; Pl.'s Mem. of Law in Opp., at p. 12.  Summary Judgment is granted as to those claims as well.

## V.  CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that Defendants' Motion for Summary Judgment is granted in part and denied in part as set forth above; and it is further

**ORDERED**, that the Plaintiff's 42 U.S.C. § 1983 claim for excessive force against Defendant Pommer, and her state law claims for battery and respondeat superior liability against Defendant Pommer and/or Defendant City of Schenectady, shall proceed to trial; and it is further

**ORDERED**, that the remaining claims asserted in the Complaint are dismissed, and it is further

**ORDERED**, that an in-person status conference will be held in this matter on December 19, 2024 at 11:00 a.m. to set the matter for trial; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

**IT IS SO ORDERED**.

Dated:   November 21, 2024
        Albany, New York

_Daniel J. Stewart_
U.S. Magistrate Judge